Tobney, J.,
delivered the opinion of the court:
The theory of the prosecution is, the defendant having impregnated Priscilla Gregory, killed her to conceal his criminal intimacy with her.
In support of this theory, the testimony of Richard Waters is relied on. He proves: “About three weeks before the deceased was killed, I heard the defendant say, Svoinen have danged cute ideas.’ (He and Evans were joking.) Pritchett (alias Evans), said: ‘Yes, you would have been caught if it had not been for me.’ It seemed tha* Pritchett had been to defendant’s, and defendant had been out. Pritchett said to defendant, 'They would have caught you if the curly-headed girl had not been pretty sharp.’ The defendant said: 'We all had to lie like thunder, or they would have caught us anyhow.’ Defendant said: ‘I will not send the little boy down there any more.’ This was a curly-headed girl they spoke of; they used no names.”
. This was admitted over the objection of the accused, and allowed to go to the jury. There is nothing in the record pointing to the “curly-headed girl” as the deceased.
Upon the closing of the testimony, and its failure to connect the testimony of Waters with the deceased, the court should have withdrawn it from the jury, and have carefully cautioned it to disregard it entirely in their deliber *429 ation upon the facts. This was not clone, nor was it noticed in the charge of liis Honor, the circuit judge, to the jury.
"While we clo not say it is positive or reversible error (nor is it necessary here) to admit testimony in the way indicated, we think it much the safer and better rule to require the relation of the testimony to the merits of the case, to be shown before the testimony is received. In this way all danger of bias and prej udice to the minds of the jury is avoided. Juries are not, ordinarily, practiced in the application of rules of -law to facts, nor are they often prepared to become unmindful of facts proven, and divest themselves of impressions therefrom, however illegal and irrelevant such facts may be. It is exceedingly dangerous to allow matter calculated to establish moral turpitude on the part of the accused, to go to the jury, however foreign that matter may be to the issue involved in the trial, especially if - that moral turpitude have the effect of establishing for the prisoner a capacity for the offense claimed by the prosecution to have been his motive for the commission of the crime for which he is on trial.
It is for violating the law, by murdering Priscilla G-reg-01 y, the prisoner slands charged. The motive insisted upon for the murder, is the carnal knowledge and impregnation of the deceased by the prisoner, and to hide his shame. To these things the inquiry must be confined. Ilis declarations or confessions of criminal intimacy with the “c.urly-keaded girl,” are not involved in the problem to- be solved —can give no aid to its- solution, but may prejudice a jury in establishing the fact that the accused has been criminally familiar with one woman, and therefrom they may conclude', without proof, he was so familiar with the deceased. The record shows that Pritchett, with whom the conversation about the “curly-headed girl” was had by the defendant, was a witness introduced and examined by the state. If that girl had been the deceased, it was easy for the srate to have shown it, and it was its duty to have done so.
*430 Susan Gregory, the mother of the deceased, was permitted to depose, defendant objecting:
"The defendant was at my house the day before the killing. He went on out of the gate. As he went out I spoke to Mm; don’t know whether he heard it or not. I spoke out loud: I said, ‘Go on, you old Spencer, you have got my gal in a family way.’ ITe turned round, and said, 'Are you talking to mc?; 1 said, 'No, 1 was speaking to Oilla.’ ”
The purpose of this testimony was to fix upon the'defendant a tacit confession of the paternity of the child, with which “Cilia” was enceinte.
Properly qualified and guarded, its admission would have been legal; otherwise, not. It was in no way qualified, but admitted broadly. The court should have instructed the jury they must, before giving weight to it, have believed the accused heard and understood the expression of the mother, and if he did hear and understand without denial, that would be a circumstance from which his confession of the truth of the charge might be inferred, unless there were other circumstances excusing a reply on his part.
It was essentially necessary, in this instance, that the court should have given, the rule as to the character and weight of confessions, to the jury, as the inquiry of the oefendant makes it doubtful whether he did hear, and the reply of the mother shows an unwillingness by her that he should hear her remark.
Nothing in the record conflicts with the idea that the defendant may not have heard what was said. We cannot see how far the parties were apart; whether the mother was in or out of the house; how far the gate was from the house, etc. This point is certainly susceptible of plainer and more satisfactory proof.
Reverse the judgment.